THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW
   YORK CENTRAL RAILROAD COMPANY, Respondent, *v.*
   STATE TAX COMMISSION, Appellant.

**Railroad — tax — ownership of lands under water does not
authorize railroad company to construct and operate railroad
thereon — such right conferred by charter of company and
constitutes a taxable " special franchise."**

1. The ownership of lands under navigable waters by a railroad
company does not confer upon the company the right to construct
or operate its railroad across such waters. This right is conferred
by its charter of incorporation and is a public franchise the exercise
of which constitutes that species of property defined in the Tax Law
(Cons. Laws, ch. 60, § 2, subd. 6) as a " special franchise " and is
assessable as such, under the Tax Law.

2. A franchise tax was, therefore, properly assessed upon the bridge
and railroad structure of the relator crossing the navigable waters of
Peekskill bay though it is the owner in fee of the lands under the
waters thereof on which are constructed its tracks.

*People ex rel. N. Y. C. R. R. Co.* v. *State Tax Comm.,* 208 App.
Div. 706, modified.

(Argued September 29, 1924; decided December 9, 1924.)

APPEAL, by permission, from three orders of the Appel-
late Division of the Supreme Court in the second judicial
department, entered January 21, 1924, modifying and
affirming as modified three orders entered upon the report
of a referee in certiorari proceedings to review special
franchise tax assessments.

*Carl Sherman,* Attorney-General (*John M. Farrell* of
counsel), for appellant. The waters at both locations,
over and across which relator has extended its right of
way by means of bridges upon and along which it operates
a steam railroad, are navigable and, therefore, public
highways. (*W. V. P. & P. Co.* v. *Peck,* 189 App. Div.
291; *Morgan* v. *King,* 35 N. Y. 454; *Daniel Ball Case,*
77 U. S. 557; *Montello Case,* 20 Wall. 320; *Economy Light*

*Co.* v. *United States*, 256 U. S. 113; *Cummins* v. *Spruance*, 4 Harr. 315; *Sigler* v. *State*, 7 Baxt. [Tenn.] 493; *Ten Eyck* v. *Warwick*, 75 Hun, 562; *Water Power Co.* v. *Water Comrs.*, 168 U. S. 358; *Hickok* v. *Hine*, 23 Ohio St. 523.) The crossings of the waters at both locations create and constitute that species of property called " special franchise." (*Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *People* v. *N. Y. & Staten Island Ferry Co.*, 68 N. Y. 71; *Matter of Long Sault Development Co.*, 212 N. Y. 1; *N. Y., L. & W. R. R. Co.* v. *Roll*, 32 Misc. Rep. 323; *People ex rel. H. R. & P. C. R. R. Co.* v. *State Board*, 215 N. Y. 507.)

*George H. Walker* and *Alexander S. Lyman* for respondent. The occupations assessed are not special franchise occupations. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Gourley*, 198 N. Y. 486; *People ex rel. Met. St. R. Co.* v. *Tax Comm.*, 174 N. Y. 417; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Woodbury*, 167 App. Div. 428; 218 N. Y. 635; *People ex rel. L. I. R. R. Co.* v. *Tax Comrs.*, 148 App. Div. 751–756; 207 N. Y. 683; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Matter of Long Sault Development Co.*, 212 N. Y. 1; *Harger* v. *Herman*, 62 Misc. Rep. 428; 144 App. Div. 772; 207 N. Y. 745; *Waterford El. L., H. & P. Co.* v. *State of New York*, 208 App. Div. 273; *Frazee Milling Co.* v. *State of New York*, 122 Misc. Rep. 545; *People ex rel. Lehigh Valley R. Co.* v. *State Tax Comm.*, 206 App. Div. 549; *People* v. *Steeplechase Park Co.*, 218 N. Y. 459.) The railroad bridges are not constructed over public waters. (*The Daniel Ball*, 77 U. S. 557; *Gratz* v. *McKee*, 270 Fed. Rep. 713; *Harrison* v. *Fite*, 148 Fed. Rep. 781; *Schulte* v. *Warren*, 218 Ill. 119; *Hubbard* v. *Bell*, 54 Ill. 110; *Griffith* v. *Holman*, 23 Wash. 347; *People ex rel. N. Y., O. & W. Ry. Co.* v. *Tax Comm.*, 191 N. Y. Supp. 644; *Hedges* v. *W. S. R. R. Co.*, 150 N. Y. 150.)

CRANE, J.   The referee found in this case that the New York Central Railroad Company is the owner in fee of the lands under water on which are constructed its tracks over that portion of the Hudson river known as Peekskill creek or Peekskill bay.  The railroad bridge at this place has a lift draw for the passage of vessels and is built across an opening in the railroad's right of way at a point at least one-half mile westerly from where the so-called Peekskill creek empties into the bay.  The referee also found that there is a large bay inside or easterly of the railroad at Peekskill which is used, although not extensively, for commercial navigation and the State camp, used for military purposes, borders upon the northerly and easterly sides of this bay and a public highway runs near the edge of the water.  Peekskill creek, the referee found, as distinguished from the bay, is not navigable waters.  The barges loaded with stone and sand along the south shore passing out through the draw-bridge and returning do not navigate Peekskill creek.  The tide waters of the Hudson river flow through and under the bridge and make it possible for boats of light draft to enter the bays east of the railroad.  The one span in the Peekskill bridge has a draw span of fifty feet in the clear, the drawbridge structure including the appliances for operating it, and a short span at the south covers about two hundred feet.  The referee further found that the draw span in the railroad structure is maintained for the purpose of affording access to the channel of the Hudson river by owners of the lands east of the railroad who transport by barges sand and stone excavated upon their lands.

As emphasizing the finding by the referee that the waters of Peekskill bay east of the railroad are used for commercial navigation, he refused to find a request reading as follows: " That the place where relator's railroad crosses Peekskill bay the waters of the Hudson river are not navigable waters in which the public has any right of

navigation or over which the public has any right of access to the bay east of the railroad bridge and said waters are not public waters or a public place."

Upon these facts as found by the referee, he determined that the bridge and the railroad structure or tracks at this point crossing navigable waters constituted a franchise assessable as such under the Tax Law. The Appellate Division has reversed none of these findings of fact made by the referee but has reversed his conclusions of law that the crossing of the navigable waters of Peekskill bay was a public franchise, and has given as a reason for this reversal that the right of the New York Central Railroad Company to occupy the location known as the " Peekskill Creek — Bridge Across " did not result from the permission granted by public authority but by reason of owner-ship of its right of way by said railroad company. The Appellate Division set aside the assessments. The ownership by the railroad of land under water did not give it the absolute right to shut off navigation in the Hudson river or the navigable bays flowing into it. The right to cross these public or navigable waters was a right flowing not from its ownership of the land under water but from its charter of incorporation. This right to cross the public waters was a franchise. The charter right was granted by section 14 of chapter 216 of the Laws of 1846, and the exercise of the right constitutes that species of property defined in subdivision 6 of section 2 of the Tax Law (Cons. Laws, ch. 60) as " special franchise." That the Peekskill bay is navigable within the findings of the referee, reference may be had to *Morgan* v. *King* (35 N. Y. 454); *The Daniel Ball* (77 U. S. 557); *The Montello Case* (20 Wall. 430); *Economy Light & Power Co.* v. *United States* (256 U. S. 113).

As above stated, the ownership of lands under navigable waters does not confer upon the owner thereof the right to construct or operate a railroad across such waters. (*Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75;

*People ex rel. Harlem River & Port Chester R. R. Co.* v. *State Board of Tax Comrs.*, 215 N. Y. 507.)    The cases of *People ex rel. Long Island Railroad Co.* v. *State Board of Tax Commissioners* (148 App. Div. 751; 207 N. Y. 683) and *People ex rel. Hudson & Manhattan Railroad Co.* v.. *State Board of Tax Commissioners* (203 N. Y. 119) do not hold to the contrary.   In the former the railroad company had constructed its railroad upon land owned by it and entered into an agreement with the city of Brooklyn by means of which the latter was enabled to construct a street on each side of the railroad, in all one hundred and twenty feet wide.   The avenue from the very moment of its construction was subject to an easement for railroad purposes over the central portion.   The right of user in the railroad was not by public favor but because of its ownership of the easement pursuant to contract and legislative act.   The court said that both the street and the railroad easement came into existence together and that no additional right was conferred upon the railroad by the construction of the street.   The situation was anomalous with regard to Atlantic avenue in Brooklyn, as the railroad owned private property in what afterwards became a public thoroughfare.

In the *Hudson & Manhattan* case, above cited, the grant of lands under the Hudson river was for the construction of a tunnel in the soil under the river and the construction or use of the soil in no way interfered with or restricted the navigable waters.   No rights or privileges were granted in or over the navigable waters.

For these reasons the orders appealed from must be modified and the orders of the Special Term affirmed, with costs in this court and Appellate Division.

HISCOCK, Ch. J., CARDOZO, POUND, MCLAUGHLIN and ANDREWS, JJ., concur; LEHMAN, J., absent.

Ordered accordingly.